STATE OF NORTH CAROLINA v. JAMES WALLACE COCKERHAM, Defendant

No. COA01-1590

(Filed 21 January 2003)

## 1. Firearms and Other Weapons— discharging firearm into occupied property—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of discharging a firearm into occupied property even though defendant contends he did not fire into any of the types of property specified in N.C.G.S. § 14-34.1 when he fired a gun through a common wall of an apartment, because: (1) an apartment within an apartment building is an area that is surrounded on all sides or closed in, and therefore, an apartment is an enclosure as that term is used in N.C.G.S. § 14-34.1; and (2) the protection of the occupants of the building was the primary concern and objective of the General Assembly when it enacted N.C.G.S. § 14-34.1.

**2. Firearms and Other Weapons— discharging firearm into occupied property—sufficiency of description**

An indictment charging defendant with a violation of N.C.G.S. § 14-34.1 for discharging a firearm into occupied property "known as apartment D-1" was not fatally defective because an apartment is an enclosure for purposes of N.C.G.S. § 14-34.1 and the description provided sufficient precision to clearly apprise defendant of the elements of the accusation against him.

**3. Confessions and Incriminating Statements— answers to officer's questions—motion to suppress—general investigation**

The trial court did not err in a discharging a firearm into occupied property case by denying defendant's motion to suppress his answers to an officer's questions that were asked prior to defendant being given his Miranda warnings, because: (1) the officers did not pat down defendant, search him, handcuff him, or restrain his movement until they formally arrested him; and (2) even assuming arguendo that defendant was in custody, these circumstances are more similar to the general investigation situation in which Miranda warnings need not be given.

Appeal by defendant from judgment entered 13 July 2001 by Judge Donald Jacobs in Durham County Superior Court. Heard in the Court of Appeals 19 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General George K. Hurst, for the State.*

*Rudolf, Maher, Widenhouse & Fialko, by Andrew G. Schopler, for defendant-appellant.*

HUDSON, Judge.

A jury found defendant guilty of discharging a firearm into occupied property, and the court sentenced defendant to a minimum term of twenty-seven months and a maximum term of forty two months imprisonment. Defendant appeals.

The State presented evidence indicating that at approximately 7:00 p.m. on 20 May 2000, Raquel Burnette, age 11, and Dominique Burnette, age 10, were sitting on the bed in their mother's bedroom in Apartment D-1, 2733 Wake Forest Highway in Durham when they

heard a gunshot. The girls ran from the room to a neighbor's house and the neighbor called the police.

Corporal R.D. Edwards, an off-duty Durham police officer, who was nonetheless in uniform with a police vehicle, heard and responded to the dispatch about the shots being fired. When he arrived at the scene, he immediately entered apartment D-1 and spoke with the children, who showed him the hole in the bedroom wall. Corporal Edwards then went to apartment D-2, which shared a common wall with a apartment D-1.

Corporal Edwards knocked on the door and moments later, defendant opened the door. Corporal Edwards testified that "[u]pon him opening the door, I asked him what was going on. And he started mumbling . . . about people been trying to break into his house." Corporal Edwards also noticed a strong odor of alcohol coming from defendant.

Defendant then led Corporal Edwards to the back of the house. When they reached the kitchen, defendant started to walk into the bedroom. Corporal Edwards testified that he had defendant stay in the kitchen while he went into the bedroom, for his safety as well as defendant's. In the bedroom, Corporal Edwards smelled gun powder, and saw a shotgun leaning against a wall or a dresser. When he touched the shotgun to unload it, Corporal Edwards noticed that it was still hot, which he believed indicated that it had been fired recently. Corporal Edwards also testified that he saw a hole in the common wall between apartments D-1 and D-2, which appeared to have been made by a shotgun. Corporal Edwards then secured the shotgun and asked defendant to sit in the living room while he waited for Corporal Grugin to arrive.

When Corporal Grugin arrived shortly thereafter, Corporal Edwards briefed him on the situation. Corporal Grugin saw the hole in apartment D-2, and then looked at the hole from apartment D-1 to confirm that they were made by the same shot. Corporal Grugin returned to defendant's apartment, where defendant was seated on the couch, and asked him what had happened. Defendant told him that some people had tried to break into his apartment. Corporal Grugin testified that he "asked him why he—why he shot the hole in the wall—I don't know if that was my exact terminology I used in asking the question. I may have asked, 'Why did you fire the gun at the wall?' " and defendant responded "that the round he had fired through the wall wouldn't hurt anyone, and he should know, because

he was in Vietnam." Neither Corporal Edwards nor Corporal Grugin saw anyone other than defendant in apartment D-2, and neither observed any signs of forced entry. Corporal Grugin then arrested defendant, handcuffed him and placed him in a police cruiser.

Defendant did not testify, but presented evidence through five witnesses. Defendant's son, Kevin Cockerham, testified that he brought the shotgun to his father's apartment between 4:30 and 5:00 p.m. on the day of the shooting because someone had been trying to break into his father's apartment. He testified that defendant was not home when he left the shotgun and shells on the dresser.

Shekita Green, defendant's girlfriend, testified that defendant had been at her house during the day on 20 May 2000 and that she had her son, Calvin Parker, drive defendant home at approximately 6:45 that evening. Calvin Parker testified that he took the defendant up to his apartment and got him settled on the couch, waited a few minutes to make sure everything was alright, then left.

James Cockerham, Jr., defendant's son, testified that he and two other unidentified individuals went to his father's apartment at approximately 6:00 to 6:15 p.m. on 20 May 2000 to use drugs. According to James Jr., at approximately 7:00 p.m., while they were using drugs, one of the unidentified individuals went into the bedroom and fired the shotgun. James Jr. testified that after the two other individuals left, he cleaned up the apartment, put the shotgun back, and then left. James Jr. did not see his father at that time. He had not told his story to the police, and although he testified that he told his father, his brother Kevin, and his fiancé, none of them told the police.

Apartment D-1 and D-2 are adjacent to each other on the upper floor of a two-story apartment building. There are two additional units downstairs. There is a common wall between the two units, but the two units are not otherwise connected.

[1] Defendant first argues that the trial court erred in denying his motion to dismiss based upon the sufficiency of the evidence. He contends that since the State's evidence showed that defendant was entirely inside the apartment when he fired the shot, he could not have fired into occupied property within the meaning of N.C. Gen. Stat. § 14-34.1 (2001). We disagree.

In ruling on a defendant's motion to dismiss, "the trial court is to determine whether there is substantial evidence (a) of each essential

element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Whether the evidence presented constitutes substantial evidence is a question of law for the court. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 66, 296 S.E.2d at 652. Our Courts have repeatedly noted that "[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal . . . ." *State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991) (citations omitted); see also, *State v. Patterson*, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585-86 (1994). "If all the evidence, taken together and viewed in the light most favorable to the State, amounts to substantial evidence of each and every element of the offense and of defendant's being the perpetrator of such offense, a motion to dismiss is properly denied." *State v. Mercer*, 317 N.C. 87, 98, 343 S.E.2d 885, 892 (1986). (citations omitted).

N.C. Gen. Stat. § 14-34.1 proscribes discharging a firearm into occupied property and reads as follows:

Any person who willfully or wantonly discharges or attempts to discharge:

(1) Any barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second; or

(2) A firearm

into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class E felony.

N.C. Gen. Stat. § 14-34.1 (2001). While it is not expressly required by the statutory language, our Supreme Court has interpreted this section to add a knowledge requirement with respect to the occupancy of the property categories enumerated. *State v. James*, 342 N.C. 589, 595-96, 466 S.E.2d 710, 714-15 (1996).

The offense of discharging a firearm into occupied property requires that "the person discharging it is not inside the property." *State v. Mancuso*, 321 N.C. 464, 468, 364 S.E.2d 359, 362 (1988); *see*

*also, State v. Williams*, 284 N.C. 67, 74-75, 199 S.E.2d 409, 413-14 (1973); *State v. Surcey*, 139 N.C. App. 432, 436, 533 S.E.2d 479, 482 (2000). Defendant argues that he did not fire into any of the types of property specified in N.C. Gen. Stat. § 14-34.1 (2001).

Our Supreme Court has recently noted that:

It is well-settled that the meaning of any legislative enactment is controlled by the intent of the legislature and that legislative purpose is to be first ascertained from the plain language of the statute. When the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded . . . under the guise of construction.

*State v. Bates*, 348 N.C. 29, 34-35, 497 S.E.2d 276, 279 (1998) (citations omitted), *cert. denied* 350 N.C. 837, 539 S.E.2d 297 (1999), *habeas corpus appeal at* 308 F.3d 411 (4th Cir. 2002). "Words in a statute must be construed in accordance with their plain meaning unless the statute provides an alternative meaning." *Kilpatrick v. Village Council*, 138 N.C. App. 79, 86, 530 S.E.2d 338, 343 (2000).

Our Supreme Court has stated that:

Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning. In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute.

*Perkins v. Arkansas Trucking Services, Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000).

The dictionary definition of "enclosure" includes the following:

1. The act of enclosing. 2. The state of being enclosed. 3. *An area, object, or item that is enclosed.* 4. *Something that encloses, such as a wall or fence.*

*The American Heritage Dictionary of the English Language* 430 (1978) (emphasis added). Further, the definition of "enclose" is:

1. To surround on all sides; fence in; close in. * * * 3. To contain, especially as to shelter or hide . . . .

*Id.*

STATE v. COCKERHAM

[155 N.C. App. 729 (2003)]

Although the word "apartment" is not used in the statute, it is commonly used to refer to a housing unit in a multi-family residential structure. The dictionary defines the term apartment as follows:

> 1. A room or suite of rooms designed for housekeeping and generally located in a building which includes other such rooms or suites . . . .

*Id.* at 60.

Therefore, for the purposes of N.C. Gen. Stat. § 14-34.1, we believe that an apartment within an apartment building is an "area" that is "surround[ed] on all sides" or "close[d] in." Thus, we hold than an apartment is an enclosure as that term is used in N.C. Gen. Stat. § 14-34.1. Furthermore, our Supreme Court has stated that the "protection of the occupants of the building was the primary concern and objective of the General Assembly when it enacted G.S. 14-34.1." *State v. Williams*, 284 N.C. 67, 72, 199 S.E.2d 409, 412 (1973). By classifying an apartment as an enclosure, our holding is consistent with that legislative purpose. A person who fires a gun through a common wall of an apartment is engaged in the same mischief as a person shooting into the building from the outside. This assignment of error is overruled.

**[2]** Defendant next argues that the indictment for violation of N.C. Gen. Stat. § 14-34.1 was fatally defective in that it failed to allege that defendant fired into a "building, structure . . . or enclosure." The pertinent portion of the indictment here alleged that "the defendant . . . unlawfully, willfully and feloniously did discharge a shotgun, a firearm, into that dwelling known as apartment 'D-1', located at 2733 Wake Forest Highway, Durham, North Carolina . . . ." Defendant's argument is premised on the assumption that an apartment is not one of the types of property specified in N.C. Gen. Stat. § 14-34.1.

According to N.C. Gen. Stat. § 15A-924, an indictment must contain a "plain and concise factual statement in each count which . . . asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5) (2001). An indictment which avers facts constituting every element of an offense need not be couched in the language of the statute. *State v. Palmer*, 293 N.C. 633, 638-39, 239 S.E.2d 406, 410 (1977).

STATE v. COCKERHAM

[155 N.C. App. 729 (2003)]

Here, the indictment accused defendant of discharging a firearm into "that dwelling known as apartment 'D-1', located at 2733 Wake Forest Highway, Durham, North Carolina . . . ." Since we have held that an apartment is an "enclosure" for purposes of N.C. Gen. Stat. § 14-34.1, and this description provides sufficient precision to clearly apprise defendant of the elements of the accusation against him, this assignment of error is overruled. *Palmer*, 293 N.C. at 638, 239 S.E.2d at 410; *see also*, N.C. Gen. Stat. § 15A-924(a)(5) (2001).

[3] Finally, defendant argues that the trial court erred in denying his motion to suppress his answers to Corporal Grugin's questions that were asked prior to defendant being given his *Miranda* warnings. We disagree.

Our standard of review of the denial of a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law. *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991). The court's findings "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001), *appeal after remand*, 355 N.C. 264, 559 S.E.2d 785 (2002), *recons. denied*, 355 N.C. 495, 563 S.E.2d 187 (2002). "The determination of whether a defendant was in custody, based on those findings of fact, however, is a question of law that is fully reviewable . . . ." *State v. Briggs*, 137 N.C. App. 125, 128, 526 S.E.2d 678, 680 (2000). The trial court's failure to make findings of fact regarding custody "does not prevent this Court from examining the record and determining whether defendant was in custody." *State v. Torres*, 330 N.C. 517, 525, 412 S.E.2d 20, 24 (1992).

Our Supreme Court recently held that "the appropriate inquiry in determining whether a defendant is 'in custody' for the purposes of *Miranda* is, based on the totality of the circumstances, whether there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Buchanan* at 339, 543 S.E.2d at 828. Absent objective indicia of such restraint, the fact that police have identified the person interviewed as a suspect and that the interview was designed to produce incriminating responses from the person are not necessarily relevant to the determination of whether the person was in custody for *Miranda* purposes. *Stansbury v. California*, 511 U.S. 318, 324, 128 L. Ed. 2d 293, 300 (1994), *cert. denied*, 516 U.S. 923, 133 L. Ed. 2d 222 (1995).

Here, the officers did not pat down defendant, search him, handcuff him, or restrain his movement until they formally arrested him.

STATE v. COCKERHAM

[155 N.C. App. 729 (2003)]

Defendant let Corporal Edwards into his apartment and led him to the back of the apartment. While Corporal Edwards was looking in the bedroom, he left defendant in the kitchen. Corporal Edwards located a shotgun in the bedroom, smelled gunpowder, found a spent shotgun shell, and observed a hole in a bedroom wall that appeared to have been made by the shotgun. Corporal Edwards then secured the shotgun and had defendant sit in the living room. Corporal Edwards then waited at the door to the apartment for Corporal Grugin, the lead investigator, to arrive.

Corporal Grugin arrived seven to ten minutes after Corporal Edwards and was briefed on the situation by Corporal Edwards. After Corporal Grugin observed the hole in the wall from both apartments, he returned to defendant's apartment and asked defendant what had happened, to which defendant replied that some people had tried to break into his apartment. Corporal Grugin then asked defendant why he shot at the wall and defendant replied "that the round he had fired through the wall wouldn't hurt anyone, and he should know, because he was in Vietnam."

Here, Officers Edwards and Grugin did not formally arrest defendant or restrain his movement to the extent associated with formal arrest until after the general investigative questions were asked and answered. Based upon this evidence, we find no objective indicia of formal arrest or similar restraint. However, even assuming *arguendo* that defendant was in custody, these circumstances are more similar to the "general investigation" situation in which *Miranda* warnings need not be given. *See State v. Meadows*, 272 N.C. 327, 158 S.E.2d 638 (1968); *State v. Hipps*, 348 N.C. 377, 501 S.E.2d 625 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 114 (1999). The questions asked by Corporal Grugin were general "what happened" and "why" questions apparently asked when the officers did not yet know if what occurred was accidental or potentially criminal. Thus, we conclude that defendant was not in custody when he answered Corporal Grugin's questions and, as such, *Miranda* warnings were not required. This assignment of error is overruled.

No error.

Judges TIMMONS-GOODSON and CAMPBELL concur.

(Judge Campbell concurred prior to 1/1/03).