STATE OF NORTH CAROLINA v. LARRY RILEY JONES, Defendant

No. COA02-411

(Filed 6 May 2003)

**1. Evidence— citation—not admissible**

The admission of a citation charging defendant with resisting an officer and displaying a fictitious registration plate was prejudicial error. While a citation is not an indictment, there is no distinction between the potential for prejudice from the language of this citation and that found in indictments and other pleadings that may not be read to the jury by statute. The error was prejudicial because the case consisted almost entirely of witness testimony and turned on which account the jury believed. N.C.G.S. § 15A-1221(b).

**2. Sentencing— habitual felon—underlying conviction reversed**

A conviction for being an habitual felon was vacated when defendant was granted a new trial on the underlying conviction.

Appeal by defendant from judgment entered 31 May 2001 by Judge James L. Baker in Buncombe County Superior Court. Heard in the Court of Appeals 11 February 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth N. Strickland and Special Deputy Attorney General William P. Hart, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Aaron Edward Carlos, for defendant appellant.*

ELMORE, Judge.

Defendant, Larry Riley Jones, was indicted on 2 April 2001 for the following offenses: felony eluding arrest (00 CRS 56218); displaying a fictitious registration plate and resisting a public officer (00 CRS 56219); possession of over half an ounce of marijuana and possession of drug paraphernalia (00 CRS 56220); and for being an habitual felon (01 CRS 0070). All of the underlying cases came on together for trial at the 30 May 2001 criminal session of Buncombe County Superior Court. After jury selection, defendant pled guilty in the possession of marijuana and drug paraphernalia case. The State prosecuted the remaining charges, and on 31 May 2001 the jury found defendant guilty of felony eluding arrest and resisting a public officer. The jury was unable to reach a unanimous verdict on the fictitious registration plate charge, and the State ultimately dismissed that charge. The habitual felon case came on for trial at the same court session, and the jury found defendant guilty of having habitual felon status upon the felony eluding arrest conviction.

The trial court consolidated all the cases for sentencing and adjudged defendant to be an habitual felon. The parties stipulated that defendant had twenty-three prior record points and a prior record level of VI. The trial court sentenced defendant from the presumptive range to a minimum of 152 and a maximum of 192 months in prison. Defendant appeals from the convictions for felony eluding arrest, resisting a public officer, and having the status of habitual felon.

At trial, the parties presented very different accounts of the events which gave rise to these charges. The State's lone witness, Buncombe County Sheriff's Deputy T. K. Bradley (Deputy Bradley), testified that around dusk on 4 May 2000 he observed defendant operating a vehicle with a burned-out headlight on Deaverview Road in Asheville. Deputy Bradley pulled behind defendant in his marked patrol car, entered defendant's license plate number into his computer, and determined that the plate was not registered to defendant's vehicle. Deputy Bradley followed as defendant turned onto Hi-Alta

Avenue, and their speeds increased to "right at seventy and eighty miles per hour" through a "very highly populated residential area" with a posted speed limit of thirty miles per hour. As their speeds increased, Deputy Bradley activated his blue lights and siren and attempted to pull defendant over. Defendant responded by running a four-way stop on Hi-Alta Avenue and turning right onto Central Avenue, then left onto Hemlock Lane. Deputy Bradley testified that these streets were curvy and "very narrow," with many cars parked along the roadside and with residences "fairly close to the street," and that defendant was "driving very erratic[ly]." According to Deputy Bradley, he "slowed the [patrol] car sideways," "went off the edge of the roadway several times[,]" and "almost hit several parked vehicles" while pursuing defendant. At one point, defendant's car almost left the roadway while rounding a sharp curve; Deputy Bradley testified that had it done so, it would have crashed into a residence situated near the road.

After pursuing defendant for a total of "approximately eight- to nine tenths of a mile[,]" Deputy Bradley testified that defendant's vehicle ran out of gas on Hemlock Lane. Defendant exited the vehicle and ignored Deputy Bradley's commands to place his hands on the car, whereupon Deputy Bradley "had to wrestle him for a few minutes" before placing defendant under arrest. A subsequent search of defendant's person revealed four syringes and a small bag of marijuana. Deputy Bradley determined that defendant's driver's license had been revoked and also issued him a citation for the misdemeanor offenses of displaying a fictitious registration plate and resisting a public officer. This citation was admitted into evidence at trial over defendant's objection, and was later published to the jury, at the jury's request, during deliberations. Defendant stipulated at trial that his license had been permanently revoked in 1997.

Defendant testified at trial that on the evening in question he was returning home when he passed two patrol cars parked just off Deaverview Road. Defendant testified that both of his headlights were working and he was traveling thirty-five miles per hour, yet he saw Deputy Bradley look at him and "knew he was coming after me." Defendant did not see Deputy Bradley behind him and did not see any blue lights when he turned onto Hi-Alta Avenue, and he denied running the four-way stop. As defendant proceeded around the curves on Hi-Alta, he "might have got [sic] over thirty-five" but his speed never reached fifty miles per hour, much less seventy or eighty. Defendant testified that because of the curves and hills it would be

impossible to drive that fast on Hi-Alta. As defendant was turning onto Central Avenue, the street on which he lived, he saw Deputy Bradley's blue lights behind him for the first time. At this point defendant's vehicle ran out of gas, and he coasted down Central past his house and onto Hemlock Avenue, where he pulled off the road. According to defendant, he coasted past his house because he did not want his dying mother to see or hear him being arrested. Defendant testified that despite exiting the car with his hands straight up and obeying Deputy Bradley's instructions, the deputy drew his service weapon, handcuffed him and "grabbed me by the hair of my head and just slammed me down on my car."

Defendant presented testimony at trial from three witnesses who tended to corroborate various portions of defendant's testimony. Clyde Bugg, defendant's neighbor, testified that he saw defendant's car pass his house on the evening in question, followed by a police car flashing its blue lights but without a siren. Bugg also testified that he has never driven fast on Hi-Alta Avenue because it is "too crooked." Geraldine Austin, defendant's sister, testified that she saw defendant's car pass the house on Central Avenue she shared with defendant and their sick mother, followed by a police car with blue lights on but no siren. Austin testified that she witnessed her brother's arrest and that it occurred in substantially the manner he described. Theresa Murphy, defendant's niece, likewise testified that she was at defendant's house and saw his car pass the house "going no more than twenty or thirty miles an hour" followed by a police car with blue lights activated, but no siren.

Defendant brings forth thirteen assignments of error and argues that his habitual felon conviction should be vacated, and that he should receive a new trial on the felony eluding arrest and misdemeanor resisting a public officer charges. For the reasons discussed below, we agree.

[1] Defendant assigns error to the admission into evidence, and subsequent publication to the jury, of the citation Deputy Bradley issued to defendant for resisting a public officer and displaying a fictitious registration plate. Defendant interposed a timely objection to both the admission and publication of this citation; the trial court overruled defendant's objections, admitted the citation, and allowed its publication to the jury without a limiting instruction. On appeal, defendant argues that the trial court's actions were analogous to admitting an indictment into evidence and publishing it to the jury and were therefore prohibited by N.C. Gen. Stat. § 15A-1221(b),

and that these errors precluded defendant from receiving a fair trial. We agree.

Section 15A-1221(b) of the North Carolina General Statutes provides that "[a]t no time during the selection of the jury or during trial may any person read the indictment to the prospective jurors or to the jury." N.C. Gen. Stat. § 15A-1221(b) (2001). Our Supreme Court has articulated the rationale behind this prohibition as follows: "The legislature apparently intended that jurors not be given a distorted view of the case before them by an initial exposure to the case through the *stilted language of indictments and other pleadings.*" *State v. Leggett*, 305 N.C. 213, 218, 287 S.E.2d 832, 836 (1982) (emphasis added); *see also State v. Flowers*, 347 N.C. 1, 35, 489 S.E.2d 391, 411 (1997), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150 (1998).

In the case at bar, the citation stated in pertinent part that:

The undersigned officer has probable cause to believe that on or about [4 May 2000] . . . the named defendant did unlawfully and willfully operate a (motor) vehicle on a (street or highway) . . . [while] display[ing] a registration plate number knowing the same to be fictitious . . . and . . . the named defendant did unlawfully and willfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office[,] to wit: fighting with officer and arguing while being taken into custody after fleeing from officer in a vehicle pursuit.

Moreover, the following language appeared in a section of the citation entitled "MAGISTRATE'S ORDER-MISDEMEANOR ONLY[:]"

The named defendant has been arrested without a warrant and there is probable cause for the defendant's detention on the stated charges. This Magistrate's Order is issued upon information furnished under oath by the named officer.

Finally, in a section of the citation entitled "COURT USE ONLY" a handwritten instruction to "Transfer to S. Crt[.] w/ related fel[.] case" appears, under signature of District Court Judge Pope.

We hold that N.C. Gen. Stat. § 15A-1221(b), and our Supreme Court's interpretation of the statute as a means of protecting jurors from being influenced by "the stilted language of indictments and other pleadings[,]" render the admission and publication of the instant citation erroneous. *Leggett*, 305 N.C. at 218, 287 S.E.2d at 836.

We are mindful of our legislature's provision that a citation may serve as the State's pleading in all criminal cases save those initiated in the superior court division. N.C. Gen. Stat. § 15A-921 (2001); N.C. Gen. Stat. § 15A-923(a) (2001). While a citation is not an indictment, we find no distinction between the potential for prejudice resulting from the language of this citation and that found in "indictments and other pleadings."

The citation in the case *sub judice* contains much of the same "stilted language" commonly found in indictments and pleadings. In fact, the language used in this citation is almost identical to that employed in defendant's later indictment for these offenses. The citation states there is "probable cause to believe" defendant "did unlawfully and willfully operate" his car with a fictitious registration plate, and that he resisted, delayed or obstructed "a public officer in discharging or attempting to discharge a duty of his office" by fighting and arguing with Deputy Bradley "while being taken into custody after fleeing from [an] officer in a vehicle pursuit."

We hold that the citation's recitation of the charges against defendant, phrased in the "stilted" language commonly found in indictments, gave the jury a "distorted view" of the case against defendant. We find it significant that the citation also contained a signed portion entitled "MAGISTRATE'S ORDER-MISDEMEANOR ONLY" stating "there is probable cause for the defendant's detention on the stated charges[,]" as well as a section entitled "COURT USE ONLY" with what appear to be instructions to transfer these offenses to superior court along with the related felony eluding arrest charge, since the jury could interpret these statements by two different judicial authorities as conclusive evidence that defendant is guilty of the offenses mentioned therein. This is especially true where, as here, no limiting instruction was given.

We are not persuaded by the State's argument that admission of the citation near the end of Deputy Bradley's direct examination, and its publication at the jury's request only after deliberations had begun, is not an "initial exposure to the case" and therefore takes the citation outside the purview of N.C. Gen. Stat. § 15A-1221(b) and *Leggett. See Flowers*, 347 N.C. at 35, 489 S.E.2d at 411 (holding that the statute is applicable "during the jury selection and guilt/innocence phases of criminal trials" and "[o]nce a case has reached the sentencing proceeding after the trial, fear that the jury's *initial exposure* to the case will result in a *distorted* view is no longer a concern").

Having concluded that the trial court erred by admitting the citation into evidence and publishing it to the jury, we must now determine whether the error was prejudicial and thus warrants a new trial. The test for prejudicial error is whether there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]" N.C. Gen. Stat. § 15A-1443(a) (2001); *State v. Frazier*, 344 N.C. 611, 617, 476 S.E.2d 297, 300 (1996).

After a thorough review of the record, we find that defendant has satisfied his burden of showing prejudicial error. The evidence in this case, which consisted almost entirely of witness testimony, was not overwhelmingly in favor of defendant's guilt on either the speeding to elude arrest or resisting a public officer charges. The State's lone witness, Deputy Bradley, presented a very different account of what happened after defendant's car passed him on Deaverview Road than did defendant and his three witnesses. The jury's verdicts essentially turned on which account the jury believed.

Section 20-141.5 of the North Carolina General Statutes defines "speeding to elude arrest" as follows:

(a) It shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties. Except as provided in subsection (b) of this section, violation of this section shall be a Class 1 misdemeanor.

(b) If two or more of the following aggravating factors are present at the time the violation occurs, violation of this section shall be a Class H felony.

. . .

(3) Reckless driving as proscribed by G.S. 20-140.

. . .

(5) Driving when the person's drivers license is revoked.

N.C. Gen. Stat. § 20-141.5 (2001). Our General Statutes also provide that "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2001).

In convicting defendant of felony eluding arrest, the jury obviously believed Deputy Bradley's testimony that defendant knew he was being pursued by Deputy Bradley and that defendant drove recklessly in attempting to elude him. Likewise, defendant's conviction for resisting a public officer indicates the jury believed Deputy Bradley's testimony that defendant was belligerent and uncooperative when Deputy Bradley tried to arrest him. The citation's language tended to corroborate Deputy Bradley's testimony with respect to each charge. Moreover, the very fact that it was issued by a police officer and contained comments attributed to both a magistrate and a district court judge imbued the citation with the imprimatur of the State, a circumstance likely to give it undue influence with the jury. Given the almost total reliance by both parties in this case on testimonial evidence, and the conflicting nature of that testimony, we find it reasonably possible that the citation's improper admission and publication was a factor in the jury believing Deputy Bradley's testimony, thus tipping the scales in favor of conviction on the resisting a public officer and felony eluding arrest charges. Accordingly, we hold that defendant is entitled to a new trial on the felony eluding arrest and misdemeanor resisting a public officer convictions.

[2] Next, we turn to defendant's conviction for having habitual felon status, which was predicated on defendant's conviction on the felony eluding arrest charge. It is well settled that:

> [t]he only reason for establishing that an accused is an habitual felon is to enhance the punishment which would otherwise be appropriate for the substantive felony which he has allegedly committed while in such a status. . . . Being an habitual felon is not a crime but is a status the attaining of which subjects a person thereafter convicted of a crime to an increased punishment for that crime. The status itself, standing alone, will not support a criminal sentence.

State v. Allen, 292 N.C. 431, 435, 233 S.E.2d 585, 588 (1977) (citations omitted). Since we hold that defendant is entitled to a new trial on the felony eluding arrest charge, which served as the "substantive felony" underlying his conviction for having habitual felon status, defendant's habitual felon conviction must be vacated.

Because we hold that defendant is entitled to a new trial on his convictions for felony eluding arrest (00 CRS 56218) and resisting a public officer (00 CRS 56219), and that defendant's conviction for

having habitual felon status (01 CRS 0070) must be vacated, we do not address defendant's remaining assignments of error.

New trial in part; vacated in part.

Judges HUNTER and BRYANT concur.