McCULLOUGH, Judge.
 

 *103
 
 Defendant appeals from his convictions of possession of a firearm by a felon and discharging a weapon into an occupied dwelling. For the reasons stated herein, we find no plain error.
 

 I.
 
 Background
 

 On 19 August 2013, defendant Johnny Burris Bryant, Jr. was indicted in case number 13 CRS 50172 for possession of a firearm by a felon in violation of N.C. Gen.Stat. § 14-415. This indictment was superseded by an indictment issued 8 September 2014. On 19 August 2013, defendant was also indicted in case number 13 CRS 50173 for discharging a weapon into an occupied dwelling in violation of N.C. Gen.Stat. § 14-34. This indictment was superseded by an indictment issued 14 April 2014.
 

 Defendant's trial commenced at the 8 September 2014 criminal session of Cabarrus County Superior Court, the Honorable Kevin M. Bridges presiding. Jennifer Garmon testified that on 31 December 2013, she was living at 1722 Clemson Court, Kannapolis, North Carolina, in the Royal Oaks Gardens apartment complex. She and her fiancé, Daniel Long, were sleeping when around 3:00 a.m. they were awakened by a commotion outside. Ms. Garmon heard "a lot of screaming, sounded like a lot of people running around outside, people yelling [.]" She saw Delonte Scott run from a crowd of people in front of apartment 1727, the apartment of
 
 *104
 
 Shirley and Jamie Collins, and into his sister's apartment 1713, "which was directly across the street from my house." She could tell that Mr. Scott was bleeding. Mr. Scott's sister came out of the apartment and made "comments about how that was her brother and that wasn't going to happen[.]" An ambulance and police arrived on the scene.
 

 Lieutenant Brian Ritchie of the Kannapolis Police Department testified that around 2:19 a.m. on 1 January 2013, he responded to a call regarding a "fight in progress" at Royal Oaks Gardens Apartments. When he arrived on the scene, Delonte Scott had already been taken by ambulance to the hospital. After unsuccessfully searching for the suspect in the assault, LaShawn Blount, officers left the scene at 3:20 a.m.
 

 Ms. Garmon testified that soon after the ambulance and police had left the scene, a black car drove into the apartment complex and two men stepped out of the vehicle. She heard people say "[w]ell, Blaze is here, it will be handled, and I kind of just sat back and watched." Ms. Garmon and Mr. Long both learned that "Blaze" was defendant and defendant was Scott's brother. Defendant was the driver of the vehicle and Walter Sumlin was the passenger. Ms. Garmon testified that Walter Sumlin was a "little bit smaller" than defendant and that he had a silver gun in his pants. Defendant pulled a black pistol out of the waistband of his pants. Defendant, with the black pistol in his hand, started screaming "I don't care if you're cribs; I don't care if you're blood; you did my family wrong; somebody is going to get it." Ms. Garmon saw defendant walk toward the apartment of Shirley and Jamie Collins and fire his pistol towards the apartment's doorway. The bullet entered the home of Joseph Fezza and Champale Woodard, immediate
 
 *511
 
 neighbors of the Collins' apartment. Afterwards, defendant and Sumlin ran into apartment 1713.
 

 Sharita Huntley, a resident of 1745 Clemson Court, testified that she saw "Johnny Blaze," whom she identified as defendant, with a black gun in his hand. She testified that he shot it once in the air in the direction of Shirley Collins' apartment.
 

 Champale Woodard testified that she lived at 1727 Clemson Court in the Royal Oaks Gardens Apartments with her two children, Daya and Michael Fezza. Joseph Fezza, Ms. Woodard's boyfriend, also lived at 1727 Clemson Court. Michael Fezza's bedroom was located upstairs. On the night of 31 December 2012, he slept in his room. On the morning of 1 January 2013, Ms. Woodard found two bullet holes in his room near his crib. Joseph Fezza called the police to report the bullet holes.
 

 Trooper Travis Meadows testified that he responded to Mr. Fezza's call and saw two bullet holes on the wall of Michael Fezza's room. He
 
 *105
 
 believed the two holes were made by one bullet. Officer Samuel Gadd of the Kannapolis Police Department recovered a bullet from the wall of 1727 Clemson Court. Lieutenant Ritchie, who also responded to the scene, testified that he received information that Delonte Scott "had been set up by the occupants of that apartment at 1729, that they had invited him over for the purpose of him being assaulted." Lieutenant Ritchie received information that LaShawn Blount may be located in 1745 Clemson Court. As he was searching this apartment, a man told Lieutenant Ritchie that there was a man at the bottom of the steps with "two guns in his waistband." Lieutenant Ritchie identified the individual suspected to have guns in his waistband as Walter Sumlin. Lieutenant Ritchie and another officer asked Sumlin to go outside. Sumlin appeared "very nervous" and after they all walked outside, he "took off running." As he was running, Sumlin reached into his front waistband, removed a black semi-automatic handgun, and dropped it to the ground. Sumlin then pulled a second gun from his waistband, a silver revolver with a brown grip, and dropped it to the ground as well. Eventually, Sumlin was apprehended.
 

 Deborah Chancey, an analyst of firearms related evidence for the North Carolina State Crime Lab, was tendered as an expert in the field of forensic firearms analysis. She tested the following items: a silver INA 38 special revolver; a blue black Star 9-millimeter semi-automatic pistol; and one fired bullet. The silver revolver was eliminated as a source of the fired bullet. However, Ms. Chancey confirmed that the fired bullet was from the black pistol.
 

 Defendant testified on his own behalf. He testified that about 2:30 a.m. on 1 January 2013, he received a phone call informing him that his brother had been assaulted. He got into a car with his girlfriend and three other girls to head toward the apartment complex. Upon arrival, defendant exited the car, approached his sister, and asked about LaShawn Blount's whereabouts. He was told that Blount was no longer there. Defendant testified that he was "asking everybody like what happened with my brother. They was telling me things. I asked them why didn't nobody stop them; why did they let this happen to my brother, and so on and stuff of that nature." Defendant heard a gunshot but did not witness the shooting itself. Thereafter, he ran into his sister's apartment at 1713 Clemson Court.
 

 Defendant denied taking any weapons to the scene. Defendant admitted to being a felon since 1998. He testified that he did not currently own a weapon. Defendant further testified that his nickname was
 
 *106
 
 "Blaze" based on his "excessive marijuana use." He denied that his nickname had anything to do with "viciousness or violence."
 

 Defendant's girlfriend, Selma Gray, testified that on 31 December 2012, she had gone to a club with defendant and two of her friends. After they left the club and headed toward a local liquor house, defendant received a call "that somebody had jumped on his brother." They decided to check on defendant's brother and headed to the apartment complex. They all exited the vehicle upon arrival and heard a gunshot. Gray did not see who fired the gun.
 

 *512
 
 On 11 September 2014, a jury found defendant guilty of both counts. Defendant was sentenced as a Prior Record Level III. Defendant was sentenced to a term of 17 to 30 months for the possession of a firearm by a felon conviction and a term of 84 to 113 months for the discharging of a weapon into an occupied dwelling conviction.
 

 Defendant entered notice of appeal in open court.
 

 II.
 
 Discussion
 

 On appeal, defendant argues that (A) his conviction of discharging a firearm into an occupied dwelling must be vacated because the indictment was insufficient to charge this crime; (B) the trial court erred by granting the State's request for a special jury instruction; and, (C) the trial court erred by allowing the admission into evidence and publication of the arrest warrant in case number 13 CRS 50173. We address each argument in turn.
 

 A.
 
 Indictment
 

 Defendant argues that his conviction of discharging a firearm into an occupied dwelling must be vacated because the indictment was insufficient to charge this crime. Specifically, defendant argues that the term "apartment" is not synonymous with the term "dwelling" pursuant to N.C. Gen.Stat. § 14-34.1(b). Defendant also argues that the indictment was insufficient because it charged defendant with being in violation of N.C. Gen.Stat. § 14-34, instead of N.C. Gen.Stat. § 14-34.1(b). We disagree.
 

 On appeal, our Court reviews the sufficiency of an indictment
 
 de novo.
 

 State v. Marshall,
 

 188 N.C.App. 744
 
 , 748,
 
 656 S.E.2d 709
 
 , 712 (2008). "[T]he purpose of an indictment ... is to inform a party so that he may learn with reasonable certainty the nature of the crime of which he is accused [.] ... The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense
 
 *107
 
 is charged in the words of the statute, either literally or substantially, or in equivalent words."
 
 State v. Simpson,
 
 --- N.C.App. ----, ----,
 
 763 S.E.2d 1
 
 , 3 (2014) (citations and quotation marks omitted). The purpose of the indictment is "to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime."
 
 State v. Sturdivant,
 

 304 N.C. 293
 
 , 311,
 
 283 S.E.2d 719
 
 , 731 (1981). "Our courts have recognized that while an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form."
 
 In re S.R.S.,
 

 180 N.C.App. 151
 
 , 153,
 
 636 S.E.2d 277
 
 , 280 (2006).
 

 Here, the 14 April 2014 superseding indictment charged that defendant
 

 unlawfully, willfully and feloniously did DISCHARGE A FIREARM TO WIT: A PISTOL INTO APARTMENT 1727 CLEMSON COURT, KANNAPOLIS, NC AT THE TIME THE APARTMENT WAS OCCUPIED BY MICHAEL FEZZA.
 

 The indictment alleged that defendant was in violation of N.C. Gen.Stat. § 14-34.
 

 A jury convicted defendant of discharging a weapon into an occupied dwelling in violation of N.C. Gen.Stat. § 14-34.1(b), a Class D felony. "The elements of the offense prohibited by G.S. § 14-34.1 are (1) the willful or wanton discharging (2) of a firearm (3) into any building (4) while it is occupied."
 
 State v. Jones,
 

 104 N.C.App. 251
 
 , 258,
 
 409 S.E.2d 322
 
 , 326 (1991). Subsection (b) of N.C. Gen.Stat. § 14-34.1 states that "[a] person who willfully or wantonly discharges a weapon described in subsection (a) of this section into an occupied dwelling ... is guilty of a Class D felony." N.C. Gen.Stat. § 14-34.1(b) (2013).
 

 Defendant argues that the term "apartment" is not synonymous with the term "dwelling" because an apartment is not always a residence or dwelling. Defendant asserts that "while people often rent apartments as dwellings, this is not invariably true." Defendant's argument is not convincing.
 

 We note that "[t]he protection of the occupant(s) of the building was the primary concern and objective of the General Assembly when it enacted G.S. 14-34.1."
 

 *513
 

 State v. Canady,
 

 191 N.C.App. 680
 
 , 687,
 
 664 S.E.2d 380
 
 , 384 (2008) (citation omitted). Also, the plain meaning of "apartment" includes "dwelling" as it is defined as "a room or set
 
 *108
 
 of rooms fitted especially with housekeeping facilities and usually leased as a dwelling."
 
 Merriam-Webster Online Dictionary
 
 2015. We refuse to subject defendant's superseding indictment to hyper technical scrutiny with respect to form. If we were to rule that an "apartment" is not a "dwelling" within the meaning of N.C. Gen.Stat. § 14-34.1, we would contravene the purpose of the statute.
 

 Accordingly, we hold that the body of the superseding indictment sufficiently charged defendant in the words of the statute by alleging that defendant willfully discharged a firearm into an occupied apartment. Although the superseding indictment referenced N.C. Gen.Stat. § 14-34 instead of N.C. Gen.Stat. § 14-34.1(b), it did not constitute a fatal defect as to the validity of the indictment as defendant was put on reasonable notice as to the charge against him.
 

 B.
 
 Special Jury Instruction
 

 Defendant argues that the trial court erred by granting the State's request for a special jury instruction.
 

 Because defendant did not make a challenge to the jury instruction at trial, we only consider whether the trial court committed plain error.
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citation and quotation marks omitted).
 

 Defendant challenges the following portion of the trial court's jury instructions:
 

 The defendant has been charged with discharging a firearm into an occupied dwelling. For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt. First, that the defendant willfully or wantonly discharged a firearm into a dwelling. An act is willful or wanton when it is done intentionally, with knowledge or a reasonable ground to believe that the act would endanger the rights or safety of others.
 

 Second, that the dwelling was occupied by one or more persons at the time that the firearm was discharged.
 

 *109
 
 And, third, that the defendant had reasonable grounds to believe that the dwelling was occupied by one or more persons.
 
 The State is not required to prove that the defendant intentionally discharged a firearm at a victim or at the occupied property. This is a general intent crime, and the intent element applies to the discharging of the firearm, not the eventual destination of the bullet.
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant willfully or wantonly discharged a firearm into a dwelling while it was occupied by one or more persons, and that the defendant had reasonable grounds to believe that it was occupied by one or more persons, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
 

 (emphasis added).
 

 On appeal, defendant argues that the State must prove that defendant "intentionally fired at a building or vehicle, although a specific intent that the bullet actually enter into the property need not be shown."
 

 In
 
 Canady,
 
 the defendant threatened to shoot a man. The defendant pulled out his gun and pointed the gun at the man's head and fired his gun.
 
 191 N.C.App. at 684
 
 ,
 
 664 S.E.2d at 382
 
 . The shot went past the man's head and into the siding of the exterior wall of a neighbor's apartment.
 

 Id.
 

 The defendant argued that the trial court erred by denying his motion to dismiss the charge of discharging a firearm into occupied property because there was insufficient evidence that he intentionally discharged the firearm at
 
 *514
 
 either the man or at the neighbor's apartment and that he fired "into" the apartment. Our Court held that his argument was "irrelevant since the construction of the statute clearly shows that the intent element applies merely to the discharging, not to the eventual destination of the bullet."
 
 Id.
 
 at 685,
 
 664 S.E.2d at 383
 
 . The
 
 Canady
 
 Court noted that:
 

 A person violates this statute if he intentionally, without legal excuse or justification, discharges a firearm into an occupied building with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons. Furthermore, our Supreme
 
 *110
 
 Court has stated that [d]ischarging a firearm into a vehicle does not require that the State prove any specific intent but only that the defendant perform[ed] the act which is forbidden by statute. It is a general intent crime.
 

 Id.
 
 at 686,
 
 664 S.E.2d at 383
 
 (citation and quotation marks omitted). Accordingly, the Court held that evidence clearly supported the conclusion that the defendant intentionally discharged the gun, "although he may not have intended for the bullet to come to rest in the wall of the apartment building."
 
 Id.
 
 at 686,
 
 664 S.E.2d at 384
 
 .
 

 Here, as in
 
 Canady,
 
 there was sufficient evidence presented that defendant intentionally discharged a pistol as recounted by several witnesses. Based on the foregoing, defendant cannot establish that the challenged jury instruction was made in error, much less plain error.
 

 C.
 
 Arrest Warrant 13 CRS 50173
 

 In his last argument, defendant contends that the trial court erred by admitting into evidence the arrest warrant in case number 13 CRS 50173. Defendant failed to object to the admission of this evidence at trial, so we review for plain error.
 

 The arrest warrant in case number 13 CRS 50173 listed the offense of "discharging a weapon into an occupied dwelling" in which a magistrate attested to the fact that "there is probable cause to believe that ... the defendant ... unlawfully, willfully and feloniously did DISCHARGE A FIREARM TO WIT: A SILVER IN COLOR PISTOL INTO APARTMENT 1727 CLEMSON COURT, KANNAPOLIS, N.C. AT THE TIME THE APARTMENT WAS OCCUPPIED BY JOSEPH FEZZA."
 

 Defendant argues that because the State is not allowed to enter into evidence indictments or pleadings against a defendant, the State should also not be allowed to enter into evidence arrest warrants. He maintains that the jury could interpret the magistrate's statement as conclusive evidence that defendant is guilty of the offense. Defendant asserts that admission of the arrest warrant amounted to a violation of N.C. Gen.Stat. § 15A-1221(b) (2013) which provides that "[a]t no time during the selection of the jury or during trial may any person read the indictment to the prospective jurors or to the jury."
 

 Defendant relies on the holding in
 
 State v. Jones,
 

 157 N.C.App. 472
 
 ,
 
 579 S.E.2d 408
 
 (2003). In
 
 Jones,
 
 our Court held that the admission and publication of a misdemeanor citation (resisting a public officer and displaying a fictitious registration plate) was erroneous based on N.C. Gen.Stat. § 15A-1221(b). The
 
 Jones
 
 Court stated that "our Supreme Court's
 
 *111
 
 interpretation of the statute [is] a means of protecting jurors from being influenced by 'the stilted language of indictments and other pleadings [.]' "
 

 Id.
 

 at 476
 
 ,
 
 579 S.E.2d at 411
 
 (citation omitted).
 

 We agree with defendant that admission of the arrest warrant in case number 13 CRS 50173 amounted to error. However, the circumstances of the case
 
 sub judice
 
 are readily distinguishable from those found in
 
 Jones.
 
 In
 
 Jones,
 
 there was only one witness for the State, the officer who issued the citation to the defendant, and his testimony "presented a very different account of what happened ... than did defendant and his three witnesses. The jury's verdicts essentially turned on which account the jury believed."
 

 Id.
 

 at 478
 
 ,
 
 579 S.E.2d at 412
 
 . Here, there was testimony from more than one witness indicating that defendant intentionally discharged his pistol. Jennifer Garmon testified that defendant had a black pistol in his hand and fired it towards the Collins' apartment.
 

 *515
 
 Sharita Huntley testified that she saw defendant with a gun in his hand and that he shot it in the air towards the Collins' apartment. Furthermore, Daniel Long testified that he saw defendant waving a black gun in the air and thereafter heard a gunshot. Testimony from a firearms analyst confirmed that the bullet found in the wall of the apartment occupied by Michael Fezza was discharged from the black pistol entered into evidence. Accordingly, we hold that the trial court's error did not have a probable impact on the jury's finding that the defendant was guilty.
 

 III.
 
 Conclusion
 

 We hold that the indictment was sufficient to charge defendant with discharging a firearm into an occupied dwelling and that the trial court did not err in granting the State's request for a special instruction. Although we hold that it was error for the trial court to admit the arrest warrant in case number 13 CRS 50173 into evidence, it did not amount to plain error.
 

 NO PLAIN ERROR.
 

 Judges STEPHENS and ZACHARY concur.