IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-608

Filed: 16 June 2020

New Hanover County, No. 16 CRS 57809

STATE OF NORTH CAROLINA

v.

DAMIAN MAURICE GORE

Appeal by defendant from judgment entered 28 January 2019 by Judge John E. Nobles, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 19 February 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Jeremy D. Lindsley, for the State.*
>
> *New Hanover County Public Defender Jennifer Harjo, by Assistant Public Defenders Brendan O'Donnell and Emily Zvejnieks, for defendant.*

ARROWOOD, Judge.

Damian Maurice Gore ("defendant") appeals from judgment entered on his *Alford* guilty plea to voluntary manslaughter and robbery with a dangerous weapon following the denial of his motion to suppress certain evidence. On appeal, defendant argues the trial court erred in denying his motion to suppress because the State acquired his historical cell-site information without a warrant, in violation of both his federal and state constitutional rights. For the following reasons, we affirm.

I.     Background

On 24 April 2017, defendant was indicted on charges of first-degree murder, possession of a stolen firearm, and robbery with a dangerous weapon. Evidence against defendant included certain cell-phone records and historical cell-site location information ("CSLI"), which police obtained pursuant to orders issued under N.C. Gen. Stat. §§ 15A-262 and 15-263. Defendant moved to suppress this evidence and a hearing was held on 27 August 2018.

At the hearing, Detective Travis Williams ("Detective Williams") of the Wilmington Police Department testified that on 30 December 2015 at 12:44 a.m., his department received reports of a shooting. Detective Williams responded to the reports and found a deceased black male lying in the front yard of an abandoned home. The man suffered from multiple gunshot wounds and was later identified as Rashaun McKoy ("Mr. McKoy"). Law enforcement also received information that a white Altima was seen possibly leaving the murder scene, and proceeded to treat it as a possible suspect vehicle.

Deputy Johnson of the New Hanover County Sherriff's Department spotted the white Altima and followed it into an apartment complex. Deputy Johnson contacted the owner of the car and was advised that Rashaun McKoy should be driving the car. As the white Altima backed into a parking space, Deputy Johnson pulled in front of the car, blocking it in, and activated the blue lights on her patrol vehicle. A black male exited the car and asked Deputy Johnson why she pulled him over. When

Deputy Johnson ordered the man to get back into the car, he took off running. Deputy Johnson chased after the man but was unable to catch him. However, she observed that the man appeared to be grabbing at his waistband while he was running. Later that morning, police found a .38 caliber revolver covered in blood in the direction that the man had fled.

Detective Williams later searched the white Altima and found illegal drugs, a gun, and a blood-covered cell phone which belonged to Mr. McKoy. A search of Mr. McKoy's phone log revealed several incoming and outgoing calls from a number ending in 0731 and listed under the name "Dame." All of the calls occurred within four hours of the shooting, including three calls placed just minutes before the incident. Upon determining that the number belonged to defendant, Detective Williams applied for a court order to obtain defendant's cell phone records, including CSLI, for the period of 28 December 2015 through 1 January 2016.

Detective Williams completed the application pursuant to N.C. Gen. Stat. §§ 15A-262 and 15-263, sworn under oath and including a supporting affidavit. A judge issued an order granting the application, finding that "the applicant has shown Probable Cause that the information sought is relevant and material to an ongoing criminal investigation, involving a First Degree Murder." The order required Sprint to disclose the requested cell phone records, including defendant's historical CSLI. Based on the CSLI, law enforcement placed defendant in both the neighborhood of

the shooting and in the area where Deputy Johnson had confronted the driver of the white Altima at the relevant times.

In support of his motion to suppress, defendant argued that Detective Williams violated both his federal and state constitutional rights in searching his cell phone records, including his CSLI, without first obtaining a warrant supported by probable cause. Finding that the court order was equivalent to a warrant and supported by probable cause, the trial court denied defendant's motion. Defendant entered a conditional *Alford* guilty plea to voluntary manslaughter and robbery with a dangerous weapon, but appealed the order denying his motion to suppress.

## II.    Discussion

On appeal, defendant contends the trial court erred in denying his motion to suppress because the State's acquisition of his CSLI without a warrant or probable cause violated his federal and state constitutional rights to be free from unreasonable search and seizure. He further contends that, in light of this violation, his CSLI and the evidence derived from it should be suppressed. We disagree.

This Court reviews a denial of a motion to suppress for "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (2003). The trial court's conclusions of law are reviewed *de novo*. *State v. Johnson*, 204 N.C. App. 259, 262, 693 S.E.2d 711, 714 (2010).

A.      Federal Constitution

We first address defendant's claim with respect to his rights under the federal constitution.   The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by the government without a warrant supported by probable cause.  U.S. CONST. amend. IV.  In *Carpenter v. United States*, __ U.S. __, 201 L. Ed. 2d 507 (2018) the United States Supreme Court considered whether the government's warrantless acquisition of a defendant's historical CSLI was an unreasonable search prohibited by the Fourth Amendment.  Concluding that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," the Court held that the government's acquisition of a defendant's CSLI constitutes a search within the meaning of the Fourth Amendment.  *Id.* at __, 201 L. Ed. 2d at 521.  Accordingly, if the government wishes to access such information, it must first obtain a warrant.  *Id.* at __, 201 L. Ed. 2d at 525.

In addition, the *Carpenter* court further held that the Stored Communications Act, which allowed law enforcement to obtain CSLI so long as they had " 'reasonable grounds' for believing that the records were 'relevant and material to an ongoing investigation,' " did not satisfy the warrant requirement because it required something less than probable cause.  *Id.* at __, 201 L. Ed. 2d at 525-26.  Thus, the

Court held that government acquisition of CSLI based on an order issued pursuant to the Stored Communications Act or its equivalent, rather than pursuant to a warrant based on probable cause, would violate a defendant's Fourth Amendment rights. *Id.* at __, 201 L. Ed. 2d at 526.

On remand, the Sixth Circuit held that though the government should have obtained a warrant before searching the defendant's CSLI, the trial court did not err in denying the defendant's motion to suppress his CSLI because the federal "good faith exception" to the exclusionary rule applied. *United States v. Carpenter*, 926 F.3d 313, 317-18 (2019). Though evidence obtained in violation of the Fourth Amendment is generally excluded, under the good faith exception, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful,' " the evidence obtained from an otherwise unlawful search will not be excluded. *Davis v. United States*, 564 U.S. 229, 238, 180 L. Ed. 2d 285, 295 (2011) (citations omitted). Thus, the Sixth Circuit held that though the warrantless search of the defendant's CSLI violated his Fourth Amendment rights, "it was not unreasonable for the FBI agents who acquired Carpenter's CSLI to rely on [the Stored Communications Act]" because it was valid at the time. *Carpenter*, 926 F.3d at 317-18.

Here, as discussed in more detail below, the search of defendant's CSLI was pursuant to a court order supported by probable cause. However, we note that even assuming law enforcement did conduct a warrantless search in violation of

defendant's Fourth Amendment rights, the federal good faith exception to the exclusive rule would apply.[1]  Detective Williams applied for the court order to obtain defendant's cell phone records in 2016, two years prior to the United States Supreme Court's decision in *Carpenter*.  In light of the prevailing law at the time, it was reasonable for Detective Williams and the judge who approved the application to access defendant's CSLI to believe that a warrantless search of five days of a suspect's CSLI was lawful.  Accordingly, we hold that the trial court did not err in denying defendant's motion based on any Fourth Amendment grounds.

## B.    State Constitution

Defendant next contends his rights under the North Carolina Constitution were violated as well, and that it was error for the trial court to deny his motion to suppress on that basis. Our Supreme Court has recognized that Article I, Section 20 of the North Carolina Constitution (the "General Warrants clause"), like the Fourth Amendment, "prohibits unreasonable searches and seizures." *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984).  Nevertheless, "we have the authority to

---

[1] Defendant argues that the trial court did not base its decision to deny defendant's motion to suppress on the good faith exception, and that the State did not preserve the good faith exception for our consideration on appeal by raising it in the trial court below.  However, Rule 28(c) provides that "an appellee may present issues on appeal based on any action or omission of the trial court that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken."  N.C.R. App. P. 28(c) (2020).  In addition, "[o]ur precedents clearly allow the party seeking to *uphold* the trial court's presumed-to-be-correct and 'ultimate ruling' to, in fact, choose and run *any* horse to race on appeal to sustain the legally correct conclusion of the order appealed from."  *State v. Hester*, 254 N.C. App. 506, 516, 803 S.E.2d 8, 16 (2017) (emphasis in original) (citations omitted).

construe our own constitution differently from the construction by the United States Supreme Court of the Federal Constitution, as long as our citizens are thereby accorded no lesser rights than they are guaranteed by the parallel federal provision." *Carter*, 322 N.C. at 713, 370 S.E.2d at 555 (citations omitted). As our Supreme Court has explained,

> because the United States Constitution is binding on the states, the rights *it* guarantees must be applied to every citizen by the courts of North Carolina, so no citizen will be "accorded lesser rights" no matter how we construe the state Constitution. For all practical purposes, therefore, the only significant issue for this Court when interpreting a provision of our state Constitution paralleling a provision of the United States Constitution will always be whether the state Constitution guarantees additional rights to the citizen above and beyond those guaranteed by the parallel federal provision. In this respect, the United States Constitution provides a constitutional floor of fundamental rights guaranteed all citizens of the United States, while the state constitutions frequently give citizens of individual states basic rights in addition to those guaranteed by the United States Constitution.

*State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998) (emphasis in original). Thus, all defendants must be afforded at least those rights granted under the Constitution of the United States.

In *Carpenter*, the U.S. Supreme Court held that law enforcement's acquisition of a defendant's historical CSLI from a wireless carrier without a warrant constitutes an unreasonable search under the Fourth Amendment. __ U.S. at __, 201 L. Ed. 2d at 525-26. Because warrantless searches of historical CSLI have been deemed a

violation of citizens' Fourth Amendment rights under the federal Constitution, and state constitutions must be interpreted to provide at least those rights guaranteed under the federal Constitution, it follows that this Court is required to hold that a warrantless search of historical CSLI constitutes an unreasonable search in violation of a defendant's rights under the North Carolina Constitution as well. *See Jackson*, 348 N.C. at 648, 503 S.E.2d at 103.

Our state constitution has not been interpreted to provide "any enlargement or expansion of rights beyond those afforded in the Fourth Amendment[.]" *State v. Gardner*, 331 N.C. 491, 506, 417 S.E.2d 502, 510 (1992). Thus, this Court need not inquire whether defendant enjoys greater protection under our State's constitutional guarantee against unreasonable searches and seizures. However, we must accord defendant the constitutional rights he is entitled to under the Fourth Amendment. Accordingly, in keeping with *Carpenter*, we hold that a warrantless search of historical CSLI constitutes an unreasonable search in violation of a defendant's rights under the North Carolina Constitution.

### C.    Application for CSLI met Warrant Requirement

Although this Court is, as a general matter, bound by *Carpenter*, we hold the trial court did not err in denying defendant's motion to suppress because the application to obtain defendant's CSLI contains all the information necessary from which the trial court could have issued a warrant supported by probable cause, and

in fact, the trial court in its order specifically found that probable cause existed to obtain this information.

In *Carpenter*, the Supreme Court held that the acquisition of a defendant's CSLI constituted a search requiring a warrant, and that an application to access a defendant's CSLI data under the Stored Communications Act ("SCA") did not satisfy the warrant requirement. __ U.S. at __, 201 L. Ed. 2d at 525-26. As the *Carpenter* Court explained, a court order issued under the SCA did not meet the probable cause standard required for warrants because it only required that the government "show 'reasonable grounds' for believing that the records were 'relevant and material to an ongoing investigation.' " *Id.* at __, 201 L. Ed. 2d at 525 (citing 18 U.S.C. § 2703(d)). Accordingly, law enforcement's acquisition of a defendant's CSLI without a warrant or its equivalent would violate the defendant's Fourth Amendment rights. *See id.* at __, 201 L. Ed. 2d at 525.

A search warrant is a court order which directs law enforcement to "search designated premises, vehicles, or persons for the purpose of seizing designated items . . . ." N.C. Gen. Stat. § 15A-241 (2019). An item may be seized pursuant to a search warrant "if there is probable cause to believe that it . . . [h]as been used or is possessed for the purpose of being used to commit or conceal the commission of a crime; or [c]onstitutes evidence of an offense or the identity of a person participating in an offense." N.C. Gen. Stat. § 15A-242(3)-(4) (2019). "Probable cause requires not

certainty, but only a '*probability or substantial chance* of criminal activity.' " *State v. McKinney*, 368 N.C. 161, 165, 775 S.E.2d 821, 825 (2015) (emphasis in original) (quoting *State v. Riggs*, 328 N.C. 213, 219, 400 S.E.2d 429, 433 (1991). Thus, "an affidavit is sufficient to establish probable cause 'if it supplies reasonable cause to believe that the proposed search for evidence *probably* will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender.' " *State v. Frederick*, 259 N.C. App. 165, 170, 814 S.E.2d 855, 859 (2018) (emphasis in original) (quoting *Arrington*, 311 N.C. at 636, 319 S.E.2d at 256).

In North Carolina, an application for a search warrant must adhere to the following requirements:

> Each application for a search warrant must be made in writing upon oath or affirmation. All applications must contain:
>
> (1) The name and title of the applicant; and
>
> (2) A statement that there is probable cause to believe that items subject to seizure under G.S. 15A-242 may be found in or upon a designated or described place, vehicle, or person; and
>
> (3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched; and

(4) A request that the court issue a search warrant directing a search for and the seizure of the items in question.

N.C. Gen. Stat. § 15A-244 (2019). In contrast, an application for an order for a pen register or trap and trace device, which law enforcement here used to apply for access to defendant's CSLI, requires: "(1) The identity of the law enforcement officer making the application and the identity of the law enforcement agency conducting the investigation; and (2) A certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." N.C. Gen. Stat. § 15A-262 (2019).

Here, the record reflects that the application for the release of defendant's CSLI was written under oath sworn before a judge. It also included many of the other elements required for a warrant, such as: (1) the name and title of the applicant, Detective Travis Williams; (2) statements that Detective Williams was seeking certain of defendant's cell phone records that he believed would be found in Sprint's Call Detail Records and were relevant and material to an ongoing criminal investigation; (3) allegations of fact supporting those statements, including a description of the circumstances leading him to believe defendant's cell phone records for the telephone number subscribed with Sprint would reveal evidence of a crime; and (4) a request that the trial court grant an order directing Sprint to furnish the requested records. The requirements for an application for a warrant and for an

application under N.C. Gen. Stat. § 15A-262 are thus similar in many respects, save for the probable cause requirement.

Notably, following an application under N.C. Gen. Stat. § 15A-262, a superior court judge may issue an order authorizing the requested action if the judge finds:

> (1) That there is reasonable suspicion to believe that a felony offense, or a Class A1 or Class 1 misdemeanor offense has been committed;
>
> (2) That there are reasonable grounds to suspect that the person named or described in the affidavit committed the offense, if that person is known and can be named or described; and
>
> (3) That the results of procedures involving pen registers or trap and trace devices will be of material aid in determining whether the person named in the affidavit committed the offense.

N.C. Gen. Stat. § 15A-263 (2019).

Regarding warrants, a judicial official may issue a search warrant upon a finding of probable cause to believe that the requested search will lead to the discovery of the item(s) specified in the application. N.C. Gen. Stat. § 15A-245(b) (2019). The search warrant itself must contain the following information:

> (1) The name and signature of the issuing official with the time and date of issuance above his signature; and
>
> (2) The name of a specific officer or the classification of officers to whom the warrant is addressed; and

(3) The names of the applicant and of all persons whose affidavits or testimony were given in support of the application; and

(4) A designation sufficient to establish with reasonable certainty the premises, vehicles, or persons to be searched; and

(5) A description or a designation of the items constituting the object of the search and authorized to be seized.

N.C. Gen. Stat. § 15A-246 (2019).

In the present case, the court order granting the search of defendant's cell phone records contained all of the information required in a search warrant. In addition, the trial court went beyond the "reasonable suspicion" and "reasonable grounds," required under N.C. Gen. Stat. § 15A-263, and instead found that "the applicant has shown *Probable Cause* that the information sought is relevant and material to an ongoing criminal investigation, involving a First Degree Murder." (emphasis added). While an application under N.C. Gen. Stat. § 15A-262 need not show it meets the more stringent probable cause standard, the trial court nevertheless evidently believed that it did. The information contained in the application shows the trial court had a substantial basis for reaching that conclusion. *See Frederick*, 259 N.C. App. at 169, 814 S.E.2d at 858 ("[A] reviewing court is responsible for ensuring that the issuing magistrate had a substantial basis for concluding that probable cause existed.")

In his application for a court order requiring Sprint to release defendant's historical CSLI, Detective Williams alleged that the victim, Rashaun McKoy, was murdered and had sustained multiple gunshot wounds to his body. His vehicle was taken from the scene by the individual suspected of murdering him. When the vehicle was spotted a short time later, the black male who was driving exited the vehicle and fled the scene, leaving behind a blood-soaked gun and cell phone. Deputies investigating the murder later searched the cell phone's call history and discovered several outgoing and incoming calls from a number ending in 0731 that were placed only minutes prior to the shooting. The deputies determined that this number was registered with Sprint and belonged to defendant, and believed that obtaining defendant's CSLI would assist with the investigation. Thus, the application supplied information supporting a discovery of the "*probability or substantial chance* of criminal activity," *McKinney*, 368 N.C. at 165, 775 S.E.2d at 825 (emphasis in original) (quoting *Riggs*, 328 N.C. at 219, 400 S.E.2d at 433), "or the identity of a person participating in an offense," N.C. Gen. Stat. § 15A-242(4), that is required under the probable cause standard.

Furthermore, the trial court stated in its order denying defendant's motion to suppress that:

> The paper writing designated as Order, State's Exhibit P-9, is indeed a warrant based on probable cause. . . . The Court makes this determination based on the four corners of the search warrant, so that based on

those four corners of the search warrant that there was probable cause that a fair probability that evidence of a crime would be found by the issuance of such warrant.

The Court concludes as a matter of law concerning Exhibit Number 9 that there was probable cause for a search warrant to be issued, that there were no violations constitutionally of the US Constitution or the North Carolina Constitution or the statutes of law, and the Court denies the defendant's motion in that matter.

Though, as defendant argues, the application for defendant's cell phone records did not specifically assert that probable cause existed—likely because N.C. Gen. Stat. § 15A-262 does not require such an assertion—the substance of the application nevertheless supports that conclusion. We therefore agree with the trial court's findings and conclusions on this issue.

While the Supreme Court in *Carpenter* determined the "relevant and material" standard required under the SCA and other such statutes falls short of the probable cause standard required for a warrant, the present case is distinguishable because the trial court here explicitly found there was probable cause. This is a significant distinction which compels a different outcome than that of *Carpenter*. Accordingly, because the trial court determined there was probable cause to search defendant's historical CSLI, the requirements for a warrant were met and defendant's constitutional rights were not violated. Because we hold that the warrant requirement was met, we do not consider whether there exists any good faith

exception to the exclusionary rule in North Carolina, such as that which exists in the federal courts.

## III.    Conclusion

For the foregoing reasons, we affirm the trial court's order denying defendant's motion to suppress.

AFFIRMED.

Judge BERGER concurs.

Judge DILLON concurs in part, concurs in result in part by separate opinion.

DILLON, Judge, concurring in part, concurring in result in part.

Defendant argues that his Cell Site Location Information ("CSLI") data should have been suppressed because the retrieval of this data by investigating officers violated his rights both under the federal constitution and our state constitution.

As explained more fully below, I agree with the majority's mandate affirming the trial court's order denying Defendant's motion to suppress his CSLI data but not entirely with the majority's reasoning. Specifically, I disagree with the majority's conclusion that the application and court order allowing retrieval of Defendant's CSLI data complied with the requirements of a valid warrant. I agree, though, with the majority's alternate conclusion with respect to Defendant's *federal* constitutional argument that, assuming the warrant requirements were not met, the good faith exception to the exclusionary rule applies. The majority rejects Defendant's *state* constitutional argument solely based on its conclusion that the warrant requirements were met. I conclude, however, that the good faith exception applies to Defendant's state constitutional argument as well.

I. Federal Constitution

I agree with the majority's alternate basis for rejecting Defendant's federal constitutional argument, that the good faith exception to the exclusionary rule applies. That is, though Defendant's federal constitutional rights under the Fourth Amendment were violated based on *Carpenter*, he was not entitled under to an order

suppressing his evidence. *Carpenter v. United States*, 138 S. Ct. 2206, 201 L.Ed.2d 507 (2018)

## II. State Constitution

### A. The Warrant Was Defective.

In this case, the investigating officer did not seek a warrant in the classic sense, but rather applied for an order under Section 15A-262. *See* N.C. Gen. Stat. § 15A-262 (2017). At the time the officer sought Defendant's CSLI data from the phone company, it was thought that the retrieval of this data from a third party did not constitute a search under the Fourth Amendment. The United States Supreme Court later handed down its *Carpenter* decision declaring that the retrieval of CSLI data from a phone company may constitute a search. *See Carpenter v. United States*, 138 S. Ct. 2206, 201 L.Ed.2d 507 (2018). The requirements to obtain a court's approval under Section 15A-262 are less stringent than the requirements to obtain a warrant. A warrant requires probable cause, whereas an order under Section 15A-262 does not.

In this case, however, the majority concludes that the order issued allowing law enforcement to retrieve Defendant's CSLI data, though entered pursuant to Section 15A-262 prior to *Carpenter*, still met the requirement for a warrant, as the court expressly concluded that "probable cause" existed. I disagree with the majority that the requirements for a warrant were met, for two independent reasons.

*DILLON, J., concurring in part, concurring in result in part*

1. Affidavit did not establish probable cause.

First, I do not agree that the investigating officer's supporting affidavit in any way provided probable cause to justify the issuance of a warrant. In determining whether probable cause exists, North Carolina has adopted the "totality of the circumstances" test. *State v. Arrington*, 311 N.C. 633, 642-43, 319 S.E.2d 254, 260 (1984). The *only* "circumstance" listed in the affidavit providing a nexus between Defendant and the victim's death was that Defendant engaged in several cell phone calls with the victim near the time of the victim's death, the most recent occurring about 3 minutes before the victim was killed. There is nothing else. The affidavit merely states that the victim was killed; a deputy spotted the victim's car being driven shortly after the victim's death; a "black male driver" stopped the victim's car, got out, and fled; the victim's cell phone, covered in blood, was still in the car; and, regarding Defendant:

> [s]everal outgoing calls were placed to [Defendant's cell phone number][.] There were also several incoming calls from that number. Most of these calls were placed just prior to the shooting . . . [including] [t]hree [which occurred] approximately 3 or 4 minutes before [the victim was shot]. . . . [Defendant] is a person of interest in this case and [his cell phone] records are relevant and material information [to this investigation].

There is <u>nothing</u> else regarding Defendant: there is no allegation regarding Defendant's physical characteristics or that he resembled the person seen fleeing from the victim's car or was seen near the location of the killing; there is no allegation

regarding the nature of Defendant's relationship with the victim, much less any allegation that their relationship was contentious or that Defendant had some motive to kill the victim; there is no allegation that Defendant was otherwise engaged in any kind of criminal activity.

Simply put, I conclude that the mere fact that a person happens to be talking to someone on the cellphone shortly before that someone is killed, without anything more, does not constitute probable cause that the person killed the victim. My conclusion is consistent with the only cases I have found on point, though they are out of state cases. *See, e.g., Commonwealth v. Fulgiam*, 477 Mass. 20, 34, 73 N.E.3d 798, 813 (2017) ("Although the fact that [the victim and the defendant] may have used their cellular telephones to communicate with each other on the day of the murders elevated their relationship to a matter of importance in the investigation, it did not, without more, justify intrusion [to search Defendant's cellphone]"); *Commonwealth v. Snow*, 96 Mass. App. Ct. 672, 677, 138 N.E.3d 418, 423 (2019) ("Multiple cell phone calls and text messages between a defendant and a murder victim on the day of the killing, without more, also are not sufficient to establish probable cause to search the defendant's cell phone."); *State v. Marble*, 218 A.3d 1157, 1161 (Me. 2019) (upholding finding of probable cause for CSLI search where affidavit included allegation that the defendant communicated with the victim on day of the

killing *and* included several other facts establishing a nexus with the defendant and the killing).

2. The court did not make the appropriate "probable cause" determination.

Alternatively, I do not believe that the trial court made the required "probable cause" finding. Specifically, the trial court found that the applicant had probable cause "that the information sought is *relevant and material to an ongoing criminal investigation*, involving a First Degree Murder" (emphasis added). However, to obtain a warrant, there must be a finding that there is probable cause that "*evidence of a crime* will be found in a particular place." *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258 (emphasis added). I believe that the universe of what constitutes information "relevant and material to an ongoing investigation" is a bigger universe than "evidence of a crime." *See Carpenter*, 138 S. Ct. at 2221, 201 L.Ed.2d at 526 (stating that showing that evidence "might be pertinent to an ongoing investigation [is a] 'gigantic' departure from the probable cause rule").

B. Defendant's Motion Was Otherwise Properly Denied.

Notwithstanding my disagreement with the majority regarding the sufficiency of the warrant in this case, I conclude that Defendant's CSLI data was properly admitted, for two independent reasons.

1. We have a good faith exception under North Carolina law.

First, I conclude that the exclusionary rule does not apply because the detective acted in good faith in relying on our State law, pre-*Carpenter*. I note Defendant's argument that the good faith exception is not recognized under the North Carolina Constitution. However, I conclude that our North Carolina Constitution does not *forbid* the General Assembly from passing a law, as that body has done, to allow for a good faith exception to the judicially adopted rule that evidence collected in violation of the constitution generally must be excluded.

The seminal case on the good faith exception in North Carolina, upon which Defendant relies, is *State v. Carter*, 322 N.C. 709, 370 S.E.2d 553 (1988). A superficial reading of that opinion may lead one to believe that our Supreme Court was holding that our state constitution *prohibits* a good faith exception from being enacted by our General Assembly; that is, that our state constitution *forbids* the good faith exception to the exclusionary rule. Indeed, our General Assembly seems to have made this mistake when amending N.C. Gen. Stat. § 15A-974 in 2011 *to provide for* a good faith exception to the exclusionary rule. Specifically, the Editor's Notes to the statute's amendment states that "[t]he General Assembly respectfully requests that the North Carolina Supreme Court reconsider, and overrule, its holding in *State v. Carter* that the good faith exception to the exclusionary rule which exists under federal law does not apply under North Carolina law." N.C. Gen. Stat. § 15A-974 (ed. note).

6

But a closer reading of *Carter* reveals that our Supreme Court did not hold that the absence of a good faith exception under state law at that time (in 1988) was a *constitutional* matter which could only be changed by constitutional amendment. Rather, the Court held that the recognition or non-recognition of a good faith exception is a matter of public policy within the purview of our General Assembly's lawmaking authority.[2]  And, at that time, the General Assembly had provided that there was no good faith exception; and the Supreme Court merely held that the General Assembly's law was not unconstitutional, that our North Carolina Constitution *required* the recognition of a good faith exception.

In *Carter*, officers obtained blood evidence from a search without first obtaining a warrant.  Our Supreme Court noted that the search violated the defendant's rights under both our state and federal constitutions.  *Carter*, 322 N.C. at 714, 370 S.E.2d at 556.  The Court reviewed the history of the exclusionary rule in our State, recognizing that it was originally a creation of the General Assembly decades before the rule was mandated by the United States Supreme Court in its 1961 case *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081 (1961).  *See id.* at 718, 370 S.E.2d at 559 ("North Carolina was among a handful of states that adopted an exclusionary rule by statute rather than by judicial creation.").

---

[2] We note that the exclusionary rule itself (and by extension the good faith exception to that rule) is not a rule mandated by the Fourth Amendment but rather is a judicially established "rule [to] effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Illinois v. Krull*, 480 U.S. 340, 347, 94 L.Ed.2d 364, 373 (1987).

*DILLON, J., concurring in part, concurring in result in part*

In the face of a state statute which, at the time, required that *all* illegally-obtained evidence be suppressed, the State "urge[d] the Court to adopt a 'good faith' exception to our long-standing exclusionary rule," similar to that which had been adopted by the United States Supreme Court in Fourth Amendment cases, *id.* at 714, 370 S.E.2d at 556, to "create a good faith exception to the exclusionary rule under our state constitution, *id.* at 722, 370 S.E.2d at 561.

Logically, the State's argument was *not* that our state constitution should *simply allow* for a good faith exception. Such a ruling would not prohibit the General Assembly from enacting a statute providing for *greater* protections to criminal defendants, for instance by enacting a statute that required *all* illegally obtained evidence be excluded, even if gathered in good faith.

Rather, logically, the State was essentially asking our Supreme Court to declare the portion of the state statute to be unconstitutional, based on an interpretation that our state constitution *requires* that evidence collected in good faith be allowed into evidence, notwithstanding a statute to the contrary.

Our Supreme Court rejected the State's argument, refusing to "engraft a good faith exception" into our state constitution. But, in so holding, the Court did not engraft a constitutional prohibition against the enactment of a law by our General Assembly to provide for a good faith exception. Indeed, the Court recognized in its conclusion that its holding was based on long-standing public policy based on

8

enactments by our General Assembly *and expressly stated* that our General Assembly

had the authority to change the policy by changing the law:

> This policy has existed since 1937. If a good faith exception
> is to be applied to this public policy, *let it be done by the*
> *legislature*, the body politic responsible for the formation
> and expression of matters of public policy.

*Id.* at 724, 370 S.E.2d at 562 (emphasis added). Had our Supreme Court thought that

the issue of a public policy exception was constitutional in nature, the Court would

not have made such a statement, but rather would have directed the State to seek a

constitutional amendment.

I understand that there has been a lot of commentary regarding the belief that

North Carolina does not recognize the good faith exception, based on our Supreme

Court's enunciation in *Carter*. However, the only fair reading of *Carter* is that our

state constitution neither prohibits nor provides for a good faith exception, but rather

the matter is one of public policy to be decided by the people's representatives serving

in our General Assembly. *See State v. Foster*, ___ N.C. App. ___, ___, 823 S.E.2d 169

n.2 (2019) (Table) (recognizing that the language in *Carter* has been superseded by

statute).

 2. We are bound by precedent that the retrieval was not a search under state law.

Alternatively, as my second basis, assuming that the good faith exception does

not apply to searches under our state constitution, I conclude that we are bound to

hold that the retrieval of Defendant's CSLI data did not constitute a search *under our state constitution*, notwithstanding that it might be under the federal constitution.

The United States Supreme Court held in *Carpenter* that obtaining a suspect's CSLI records from the phone company constitutes an unreasonable search under the Fourth Amendment. But our Supreme Court has instructed that our state appellate courts are "not bound by opinions of the Supreme Court of the United States construing even identical provisions in the Constitution of the United States." *Arrington*, 311 N.C. at 642, 319 S.E.2d at 260. And "the language of Article 1, Section 20 of the Constitution of North Carolina [actually] differs markedly from the language of the Fourth Amendment to the Constitution of the United States." *Id.* at 642, 319 S.E.2d at 260.

Notwithstanding the differing language between the state and federal constitutions, our Supreme Court has held that our state constitutional provision, like the Fourth Amendment, "prohibits unreasonable searches and seizures." *Id.* at 642, 319 S.E.2d at 260. I recognize that if the federal constitution provides greater protection, then we must apply the federal constitution. Here, though, the federal constitution does not provide relief to Defendant because of the federal good faith exception. Defendant, however, claims that the state constitution provides greater protection in that our state constitution prohibits the application of a good faith exception. I note that our Supreme Court has recognized that our state constitution

does not provide "any enlargement or expansion of rights beyond those afforded in the Fourth Amendment[.]" *State v. Gardner*, 331 N.C. 491, 506, 417 S.E.2d 502, 510 (1992). But assuming that our state constitution prohibits the application of a good faith exception, then Defendant may be entitled to greater relief than provided under the federal constitution if the retrieval of his data constitutes a "search" within the meaning of the state constitution.

With all this said, our appellate courts are not bound to conclude that a particular type of action constitutes a search within the meaning of our state constitution simply because the United States Supreme Court holds that similar conduct by law enforcement constitutes a search under the Fourth Amendment. I am persuaded by the reasoning in *Carpenter* that the conduct in this case *did* constitute a search under our state constitution; however, our panel is bound by precedent established by another panel from our Court. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). And three years prior to *Carpenter*, a panel of our Court held that obtaining a suspect's CSLI data does not constitute a search *under our state constitution*. *See State v. Perry*, 243 N.C. App. 156, 776 S.E.2d 528 (2015).[3]

---

[3] I note that there is a more recent case from our Court on this topic, *State v. Thomas*, ___ N.C. ___, 834 S.E.2d 654 (2019). However, the panel in that case found that the doctrine of attenuation applied and thus, the trial court did not err in denying Defendant's motion to suppress the phone records obtained by the State. Here, the attenuation doctrine is inapplicable due to the absence of an intervening circumstance, which is necessary for the doctrine to apply.

11

*DILLON, J., concurring in part, concurring in result in part*

In *Perry*, the panel then made the logical leap that since retrieval of CSLI did not violate the Fourth Amendment, then the conduct did not violate the state constitution. It could therefore be argued that since the United States Supreme Court subsequently "moved the goal posts" from where they were established by the federal cases relied upon by our Court in *Perry*, the state constitutional goal posts have also been moved. Perhaps our state constitutional goal posts should be moved from where the *Perry* panel planted them. However, we remain bound by the *Perry* holding, as we should remain bound by a decision from our Supreme Court regarding a state constitutional issue, notwithstanding a decision by the United States Supreme Court, until controlling precedent concerning our state constitution is overruled by our Supreme Court. Of course, we should *apply* federal constitutional protections where those protections are greater than the protections afforded by our state constitution.